MR. WHITE. Thank you, Your Honor. Counsel, may it please the Court. There are far-reaching negative consequences to this Court affirming the decision of the District Court. The broad adoption first, the broad adoption of a     The broad adoption of a myopic, twombly standard that essentially requires a patent holder to prove infringement at the pleading stage. Second, redefining substantial non-infringing use to the same point of impracticality and undesirability that this Court forbade in Hedosh. And third, the substantial erosion of the protections afforded to method patents, especially when they are the victim of indirect infringement. Now, each of these repercussions are significant in isolation, but when combined together, as was done by the District Court, they create a maelstrom that significantly and perversely changes the face of patent law as we know it today. We appreciate that, but let's get directly to the merits of this case. Your time is quite constricted, as you know. Yes. Your Honor, first of all, we believe that the Well, let me ask you, let me direct your attention starting off to the contributory infringement aspects, and it seems to me, so what went awry here in your view? Was it that you, in your amended complaint, put forward so many non-infringing uses that the District Court therefore required you to go further than you needed to do on the infringing uses? Your Honor, I would not characterize the problem here as the allegations. I would suggest that the problem here was the analysis that was applied to the allegations that we submitted in our amended complaints. Our amended complaints substantially identified a specific infringing use for each of the products as assembled by the appellees. So you talk about this, that's the customized, right? Correct. And you talk about, is it clear to you that in the allegations with respect to infringing uses, you've identified clearly what products you're alleging infringe? Yes, Your Honor. We believe that it's clear that when we talk about the individual products that the defendants offered and how they specifically told their customers and the public that those products are customized to their needs, based on the allegations as we allege that, as we suggest to the court and this court respectfully here, must be accepted as true, that those customized abilities of their products once assembled with other things, establish that there is no non-infringing use once adapted and amalgamated to that purpose. But in several of the complaints, you do allege the existence of non-infringing uses, don't you? Certainly. It would be dishonest to suggest that this product once assembled can't do other things. But that is not the point. As this court has held many times, that is not the point. The point is, is there a specific infringing use that we have alleged depleting stage? And we certainly have alleged. If there is, but if you allege in your complaint a fact that otherwise kills your complaint and you happen to allege it, then you would agree that dismissal would be appropriate, right? Under the hypothetical, I would suggest that that's a possibility. So say your complaint said that this, we allege that they're selling this for this infringing use, but there also is a substantial non-infringing use, but we think that they don't use it that often. That would kill that complaint, right? If we allege that there was a substantial non-infringing use to the product that's assembled. But all we did in the complaint was assert that there were other uses of the product. In the complaint, we allege that there was only one substantial non-infringing, only one infringing use of the product that's assembled, and that the other uses were not substantial. So that's your argument, it turns on substantiality? Absolutely, you're right. I'm sorry. Did you identify the other uses as being non-substantial? We identified the other uses and pled that the combined aspect of the product with the other things that they were assembled, the defendants had assembled with, was a substantial non-infringing use. The inference from that that we were entitled to receive at the pleading stage is that the other uses are not substantial. This is a case at the pleading stage. All reasonable inferences must be drawn for R&L to suggest that the other uses that one could discern from the defendant's statements and from the pleadings, as we had to set them forth because the defendant's statements are what they are, to conclude that those uses are substantial in the face of the allegations that they are not, or the allegation that there is one substantial non-infringing use, turns the pleading stage on its head and requires R&L at the complaint stage to take every use that the defendants put out in the public to their complaint stage, that those uses are not substantial. But in our case law, the bar for substantiality is pretty low, isn't it? It is. It is. But I suggest to Your Honor that once the defendants combine their products that with, that has, and that combination has no other use other than to infringe on the 07-8 patent, which when you combine their products with a dispatch, when you talk dispatch software and a processor and a dispatch software has the ability to generate a loading manifest. There is no non-infringing use for that combination. Once we get to that conclusion, the question now results in, okay, well, if you can use it for sending billing receipts back to your billing department, is that substantial in the face of that specific infringing use? And I go back to the point of we are at the pleading stage. A finder of fact, a jury may one day conclude that, yes, Mr. White, sending billing statements back to the billing department, well, it is a substantial non-infringing use and you lose. But at the pleading stage, when we allege that when you put dispatch software with that scanner and that processor and it does this, and there is no substantial non-infringing use for that, that we must be allowed the ability to proceed with our case because we have put forth the evidence to establish a specific infringing use. And under the case law of this court, that specific infringing use, especially, especially at the pleading stage, controls. And that was the error of the district court, to reject our specific infringing use in the face of what possibly might be used in other situations without giving rise and concern to the fact that we are at the pleading stage and we are entitled to all reasonable inferences. Now, does that include the inference that the principles of joint infringement would apply to the various, I'd use the word contributors in a generalized sense, to the various steps of the claim? Your Honor, that issue was addressed initially by the district court and the court concluded that this was not a situation where the patent required joint infringement, that one party could in fact perform all steps of the patent and the court gave us, we believe, an appropriate evaluation of the case of the pleading stage on that particular issue and said that that was not an issue for the court to consider at this stage because it required determinations that were improper at the pleading stage. We believe the court properly ruled on that joint infringement issue. And we just believe that in certain areas the court strayed from where it was, from where it should have been under this pleading stage. And I believe... And why? Because you believe that she over-read Twombly? I mean, is that what led her to go astray? Your Honor, I think that was a specific, that was a certainly a large part of the issue that that led us to this point. Certainly the district court had a very aggressive view of how Twombly should be applied and the district court applied that extremely aggressive viewpoint of Twombly to this case. But this is not, you know, this is not an ordinary case. You know, this court is charged with dealing with patent infringements of lawsuits that have unique and difficult issues in and of themselves. To apply Twombly in such a mechanical fashion to this type of a case, we assert, was inappropriate. Well, Twombly itself was a pretty complex case, right? It was. It was. But it was a complex case in certain aspects. It was not a complex case in other aspects. The idea of whether a conspiracy held, you know, is simply, you know, a question of, a generic question of fact that I think can be discerned from basic memorial facts. I think here we're dealing with, you know, complex issues of claim construction, complex issues of intertwining law around substantial non-infringing use, about the ability of someone to allege facts that show that when combined, certain aspects of their product happen. Well, that, I mean, all of that, and I agree with you, makes it harder perhaps to apply Twombly, but it doesn't, it's not a way to get around Twombly. Certainly. It, in fact, maybe, you know, calls out more in terms of being vigilant under the Twombly standard. Your Honor, I was, no one is suggesting that this court should look to get around Twombly. What we are certainly advocating for is only that we're a more reasonable measure to application of Twombly to a case like this and to all patent infringement cases in which a plaintiff patent holder is attempting to prove sophisticated, perhaps complicated, issues in a complaint and the difficulty that one, that a patent holder will have in patent infringement lawsuits if the district court's requirements of proof are applied to all patent holders in the future. Can I ask you about your offer to sell? Why is that important, really, to your analysis here? Well, Your Honor, we certainly alleged a 271C claim for contributory infringement. Offer of sale liability applies. But you have to be offering to sell the method, right? Well, you have to be offering to sell a material or an apparatus used in a patented process, and here we are suggesting that that's exactly what the defendants did. They offered to sell a assembled product for use in a patented process and then said to the defendant, look at this assembled process. It's pretty neat, eh? You can go use it to do this, this, this, and this, which is the 078 patent. Now, the district court concluded that we had to identify a direct infringer for each of the indirect infringers. We pointed out, A, under the laws that existed then, no such court had ever held, and this court certainly never held that, and B, even if we did for 271C liability separate, apart from offer for sale. Offer for sale liability does not require the existence of a direct infringer today. It requires the existence of a direct infringer before the patent expires. But so you're arguing that offer to sell liability is not limited to an offer to sell the invention? It's not limited to an offer to sell the invention under 271C. It is, under 271C, one may offer to sell the material or apparatus used in a patented process and thereby be found to be contributory. But a method isn't a process, is it? I believe that a method or it can be can be identified as a process. A method patent is a description of a process to get to an end result, and in this situation we are dealing with a process to get to an end result. The offer for sale liability aspect of our claim, the district court was the first to ever hold that 271C liability does not extend offer for sale claims. This court has held several times. In the I4I case, the court said specifically, quote, a party is liable for contributory infringement if that party sells or offers to sell a material or apparatus for use in practicing a patented process. That seemingly would dispose of the district court's conclusion that the 271C doesn't apply to offer for sale. So you're saying that the reason that's important to your analysis is that that gets you around the direct infringement issue? If we have to identify, if to get every, for every other claim besides offer for sale liability in the 271C, if this court so holds in its wisdom that we must identify a direct infringer, that cannot be the case for offer for sale liability if it applies to a method patent, which we believe it does. And do you think you've otherwise identified direct infringer adequately? We do believe that, Your Honor. For everyone except for Intermec, R&L identified specific entities and backed those up with facts as to how those entities had infringed the patent. I asked this court to look back to our case with PeopleNet and Pitt, Ohio, and the district court's rejection of those allegations because the court concluded that it was, we didn't show that it was only possible that Pitt, Ohio, was infringing our patent by using, by using the 078 method. I would submit to this court, if the plainest burden in a patent infringement lawsuit is to establish that there's only one possible way for the defendant and the direct infringer to be doing what they say they're doing and that possible way is infringing the patent, then you're going to have a heck of a lot of less cases to review because there's not going to be many patent infringement lawsuits filed. Thank you. Let's hear from the other side. We'll save you some more rebuttal time, Mr. White. Mr. Franklin. Thank you, Your Honor. May it please the court. Jonathan Franklin representing the appellees Qualcomm, Microdia, and PeopleNet. With me at council table is Carson Veach representing appellee Intermec, Thomas Shunk representing appellee ACS, and Scott Peterson representing appellee DriverTech. My co-counsel are available to answer any questions the court may have about their clients or the case, but will not otherwise be presenting argument today. Your Honors, the judgments of dismissal should be affirmed for the principal reason that R&L pled itself out of court. This case involves allegations only of contributory and induced infringement against defendants that are not themselves accused anywhere of direct infringement. That means, as the district court correctly held, that for the contributory infringement claim, R&L under Twombly and Iqbal was required to plead non-conclusory factual allegations that plausibly demonstrate, among other things, that there are no substantial non-infringing uses for the defendant's profits, that they are incapable of any substantial non-infringing use. They didn't allege, though, that the alternative uses were substantial, did they? No. You're just saying we should conclude that on their face they're substantial as a matter of law? That's what the district court concluded. The district court cited this court's decision in Vitamix, which establishes, as your Honor did I think correctly say, a very low bar on this issue in terms of what constitutes a substantial non-infringing use, and the district court expressly held in this case that these allegations do not plausibly demonstrate that the defendant's products are clean case. I mean, that's what I'm struggling with. Are we counting numbers? Are we saying because they listed 1,400 non-infringing uses that, you know, we have to have an equal number or more on the other side? I mean, we're talking about reasonable inferences and it's hard for me to draw the line between plausible and infringing. I will certainly answer that question. I will note, though, before answering that question, your Honor, that nowhere in the district court's holding on that point. Because that's not their point, is it? Their point is that if you sell this particular device or structure with the advice or instruction that the information that this is what you should use it for, that whether there are or aren't other uses for which it might be sold is no longer the dominating consideration. I think that that gets your Honor to the induced infringement claim. Whatever you call the claim, we're looking at the statute trying to plug the various gaps as they arose when in fact there was clearly the use of someone else's invention. This is really in trying to penetrate as modern technology adjusts the sorts of issues that we see. That's where do we draw the You did say, I guess, that we're just advertising to use it in such use is not enough to induce infringement. What we're saying is that there are no properly pled non-conclusory factual allegations that demonstrate or even suggest that the defendants are in fact instructing their customers to perform each and every step of the patented method. And I will get to your Honor's question on contributory infringement. No, I appreciate that you... But there's no factual allegation that the method patent here, it's a very specific method. It requires that you use a scanned and wirelessly transmitted documentation data for one package while the package is still on one vehicle to prepare a loading manifest for transport of that package on another vehicle. And the District Court properly looked in very carefully did what the Supreme Court said district courts are supposed to do. Judge Beckwith did a very careful analysis and said none of these anything other than the defendants are like any company having their, wanting their customers to use their products. But the key here, and here's where we get back to the contributory infringement issue, is that the complaints themselves identify numerous non-infringing uses for these products. So with regard to contributory, let me just, I mean you started by saying they pled their way out of court. Yes. If they had not included in their amended complaint all of the non-infringing uses that they pled, would you then concede that there was sufficient basis for alleging contributory infringement? Is that, is that the problem here? That, not what they've actually pled in terms of infringing use, but the fact that they put in all this other stuff? This is an easier case, Your Honor, because we have right here in the complaint and the attachments, in fact, numerous non-infringing, and I can go down. Okay, so let's, but answer my question. If they had not pled those uses, where is, I mean I'm looking at page 8, 934, which at least are some of the allegations with respect to contributory infringement, is it your view that this, these allegations would be sufficient under Twombly in the absence of the allegations regarding non-infringing uses? I would say no, Your Honor, because even then you would still have to come forward under Twombly and Iqbal, you would still have to have non-conclusory factual assertions that lead to the plausible conclusion that there are, in fact, no substantial non-infringing uses. But didn't, do you think the district, we can fairly read the district court's opinion, is not, is sort of that she would have gone that way in the absence of, didn't she rely almost entirely on the allegations regarding non-infringing uses? Well, she did because she was looking at the complaints that she had before her as we have to look. So are you saying that Twombly says that at the pleading stage they have to identify every possible use so that just in case there's a non-infringing use, the district court can kick it out? No, they need to make factual allegations that are non-conclusory that lead to a plausible conclusion that there are no substantial non-infringing uses for these products. That's what they failed to do. In fact, this case is easier. Look at paragraph 115 on A934. 934, okay. I mean, tell me, I may be looking at the wrong complaint there so much. But here they're talking, so they're talking about the customized. So that's what they said. There are non-infringing uses, but then we've got this customized version, right? Which paragraph are you looking at? Well, 115. I mean, the preceding paragraphs, well, one, if you could tell me the preceding paragraphs, it seems to me, identify, let you or other defendants know exactly what products they are alleging are the key products here, right? And then they go on to say that as customized, it has no other substantial non-infringing use. Why is that insufficient? It's insufficient, first of all, Your Honor. If you look at, for example, paragraph 114, what they're drawing here are what they claim to be reasonable inferences from the facts that they've pled, not actual facts. And they've been very careful in their complaints to talk about what they claim are reasonable inferences and what they claim are actual facts. In this case, there are no actual facts pled that indicate that there is this, this what you call customized use that has no substantial non-infringing use. But what the district court, I think, correctly said was look at the whole complaint, which is what the court needs to do, and that's what the Supreme Court did in Twombly and what the Supreme Court did in Iqbal, and say, look, they've got dozens of non-infringing uses here that cannot be considered insubstantial as a matter of law, citing the Vitamix standard. Because of that, you can't plead something like this that is just completely contrary to what is in your complaints. Once it's been programmed, there is no other use? But that's not true, and none of the factual allegations show that. The products here we're talking about are simple things like scanners and onboard PCs. These things just simply do what scanners do and PCs do. Yes, it is possible that somebody could use these things to do all of the method steps, but there's no non-specific factual, no non-conclusory factual allegations that anybody actually is doing that. So tell me, let's assume hypothetically they didn't reference the other non-infringing uses. How would they have had to have crafted these paragraphs here to sufficiently pass the trial? I think they would have to show a non-conclusory factual assertion that, in fact, these products can only be used to infringe this patent. Now, in a normal case of a contributory-induced infringement, that might not be hard because you would have a product that can be used only to infringe. But aren't you talking about a summary judgment standard? I mean, at the pleading stage, yes, it has to be a reasonable inference, but it doesn't have to be the only reasonable inference. So if there are competing reasonable inferences, then you're supposed to draw the inference in favor of the pleader. Well, it has to be the plausible inference, is what the Supreme Court said in Twombly and Akebon. In Twombly, to just compare. Right, so plausibility is actually a lesser standard than reasonable. Well, the reasonable inferences and the plausibility standard are essentially the same. But here the district courts seem to say, well, you know, yes, maybe that's true, but it's also just as reasonable that you could be doing something else. So I'm going to assume it's likely something else. I don't think that they said it was just as reasonable. Or even more reasonable. It doesn't matter. It just has to pass a threshold at the pleading stage. To take you to Twombly, Your Honor, Twombly involved a case where there was an allegation of an illegal conspiracy to raise prices. And what they pled was that there, in fact, was parallel conduct by these defendants in this antitrust case that, in their view, reasonably inferred that these defendants were conspiring to raise prices. And the Supreme Court said no. At pleading stage, we have to look at those allegations and say, do they raise a plausible inference? In other words, is it in fact reasonable to infer from this  than no liability? And the Supreme Court said there are other... Well, that's because it's clearly legal. And so you don't just take from a pure legal... Like, if they made a lawnmower and said, you sell a lawnmower, therefore we infer that you're infringing, we'd say that's not enough. Because just selling a lawnmower doesn't mean you're infringing. But what they've done here is more than that. No, they haven't, actually, Your Honor. What they've done here is they've said, you're defendants, you sell a scanner. Okay? You're selling scanners to trucking companies. Those scanners, in their view, can be used to infringe. But the evidence, in fact, shows that the scanners are, in fact, used... Evidence. Evidence. I'm sorry. The allegations. No, they can... The allegations and including the attachments to the complaint. And this is, I think, to step back a bit, the district court here did, I think, exactly what the Supreme Court said district courts are supposed to do here. At the pleading stage, you cannot have the ability to drag defendants through discovery, expensive discovery, unless you've raised your allegations to the point where they plausibly suggest liability rather than no liability. Well, fair enough. But we're talking about the underpinnings of all of this is Rule 8. I mean, the point of all of this is to give fair notice to you all what they're claiming and what the grounds for their claims are. Is that right? That's part of it, Your Honor. All right. And did you, so, based on these allegations that we've just referred to, did you or the other defendants have notice as to what products that you're dealing with are alleged to be infringing? No, our products are not alleged to be infringing. Our products are alleged to contribute to infringement. And no, we did not have notice as to exactly how our products are contributing to the infringement because they didn't, in fact, identify any specific act of direct infringement. All they showed in the, and again, I didn't want to mean evidence, all they showed in the evidence are that, in fact, these products, scanners, can be used for all sorts of things. So let me take an example that... But you knew what products they were talking about. I mean, you may well, I mean, who on earth can determine, predict the merits? I mean, you may well be able to absolutely establish, even at summary judgment, that there's no infringement here. Right. But isn't that for another day? No, I think not, Your Honor. In the Twombly, for example, the defendants could well have prevailed on summary judgment on the grounds that there was no agreement to raise prices. And what the court said is no. At the pleading stage, you cannot have the ability to take the defendants down that road unless you put forward factual allegations which rise past the level of maybe, past the level of might, and towards the level of plausibility and a reasonable inference of liability. With respect to the piece as it relates to the direct infringer, what's the interaction here between Twombly and Form 18? I mean, clearly Form 18 says that we're to accept a very piecemeal, very simple, very bare-bones allegation as it relates to direct infringement. So why wouldn't that direct infringement, why wouldn't that at least guide us under Rule 84 as it relates to the direct infringement allegations? Two points, Your Honor. First, Form 18 relates only to an allegation of direct infringement against somebody that is themselves accused of direct infringement. To the extent it has any validity after Twombly and Iqbal, and I think there's a serious question as to whether Form 18 would. Well, the Supreme Court can't. I mean, those are congressionally authorized. The Supreme Court cannot take away Rule 84. Absolutely, Your Honor, but that only applies to an allegation of direct infringement against the direct infringer. In this case, we have allegations of indirect infringement, but we don't even get to that point because, in this case, we know from the complaint itself that there are numerous uses from tracking customers' bills to sending bills faster, to tracking the locations of trucks, to security issues, to having drivers send emails. All of these things are alleged in the complaint as things that these products... And now you're back to the contributory infringement. Right, but I'm saying that you don't even need to reach the direct infringement issue. On inducement, we would, right? No. I mean, that's one of the main things you argue is that the direct infringement allegations are insufficient. That is one of the issues that we argue, but in terms of inducement, there still has to be an allegation that the defendants actually instructed their customers to perform each and every step of the method in the order. It's not sufficient, as it might be in some other case, to simply say, we're asking our customers to use our products because we know from the complaint that the products can be used for all sorts of things. There's staple articles of commerce that can be used for all sorts of things that aren't infringing. So simply telling your customers, hey, you can use our product isn't enough to constitute inducement. You have to actually, in this case, instruct your customers to take a wirelessly transmitted documentation data from a package while the package is still on one truck for delivery of the package on another truck. This is the method claim. They didn't invent the idea of scanning things. They invented this specific method. And in order for a defendant to be liable for induced infringement of that method, there have to be specific non-conclusory factual allegations that the defendants are in fact instructing their customers to use their products in this manner. Well, but they have so alleged. Does your position turn on our agreeing with that, that our cases are all over the world? Well, it's a highly fact-dependent determination as to how much has to be said when they say that they target as the target of their advertising the people who are in this business and say here this is, it's been adjusted, it's been programmed to be used in this system which is a very nice system. But that's in fact, with respect, not what they allege in their complaint. What they allege in their complaint is that the customers, the defendants advertise these products for all of these non-infringing uses that in their view could be, they could, customers could use them to infringe. But they do not have factual allegations. They have what they call reasonable inferences from their facts that in fact the customers are being instructed to do this. Well, that's the question. Does your position depend on whether we think such a reasonable inference can be drawn in the pleadings? Yes, I think that that's what the district court said is that you cannot draw the reasonable inference from these pleadings, that the defendants are in fact instructing their customers to do all the steps of the method. All you can do is draw the reasonable inference that these defendants aren't asking their customers to use their products for all sorts of non-infringing uses. And that's all that the factual allegations actually establish in this case. And Judge Beckwith really very carefully looked through all of the allegations and said, no, the inference that your Honor is just mentioning, it's not a reasonable one. And that's what Twombly and Iqbal instructs district courts to do, is to say, we do not indulge in inferences that are not reasonable. In other words, they don't reasonably follow from the facts. In this case, we have facts pled that the defendants sell things like scanners to trucking companies. What they're doing is making the leap from those facts to what they claim is a reasonable inference. Number one, that that's all that the customers are doing. And number two, that they're being instructed to perform this very complicated method with these scanners. With respect, those inferences do not follow. And those are the inferences that the district court properly rejected under Iqbal as unreasonable. But you would agree that the district court is not allowed to weigh inferences and decide which is most reasonable. No. The district court has to determine whether there's a reasonable inference of liability in this case. And in this case, the district court, I think, correctly said no. And to back up a bit here. But by analyzing the cases the way the district court did and then saying, well, we think, I think it falls closer on this side of the line than that side of the line, you don't think there was some weighing of inferences in terms of saying which set of facts would bring me to which conclusion? No. I think the district court took the facts. And the facts are simply that these products are being sold to the customers. Those are really the facts. And the facts are also that the defendants are asking their customers to use them. If those facts were sufficient to establish a valid complaint for contributory induced infringement, then anybody could bring a complaint and say, hey, there's a product that can be used to infringe a method. Now, let's stick to this case rather than what anybody can say. I think we've well exhausted your time. If you have any questions, you must ask Mr. Franklin. Thank you. Thank you, Mr. Franklin. Would you enlarge Mr. White's time that we've run over to the original rebuttal time? Thank you, Your Honor. Addressing first the issue of non-infringing use. The allegations in the amended complaints do not assert that there is a substantial non-infringing use of the products as assembled and as encouraged by the defendants and the appellees to that they as they encourage their customers to use those products. Certainly, what is only stated in the amended complaints, which is necessary because that's how the defendants and the appellees offer their products to their customers in some instances, is that for a when you slice and dice the individual components of the assembled product, that you might find non-infringing uses in the individual components. That, however, is an exercise that this court in Hedosh said is not appropriate. Isn't part of your problem the narrowness of your claim? I mean, your claim doesn't say at the end of the day you could print out any variety of things like billing invoices, etc. It says that you have to print out a very specific document at the end of the day. So the narrowness of your method claim really is what partially makes it so difficult for you here to to allege that that's what they're doing with it. I agree with you, Your Honor, and I think the narrowness of the claim requires, I think, more precise evaluation of the pleadings and what the district court was willing to engage in because when you think about the narrowness of the claim, it depends then on the dispatch software that is used. The dispatch software is a piece of the dispatch software. There is a piece of that dispatch software, a significant piece, because it's dispatch software. What does dispatch software do? It tells a trucking company where to move a package to another spot. That's what dispatch is all about in the trucking industry. But a substantial, if not the vast majority of that dispatch software is focused on generating a document, a document that tells the people on the dock, what do you do with this package when it comes in? When the defendants assembled their products with these things and amalgamated into a offering that had on the end dispatch software with a piece of it specifically and only designed to create a loading manifest, that assembled product brought it within the narrow function of our claim. And what has happened here is that the district court has said, I'm not going to look at that portion of the assembled product because I think that when I slice the scanner off of the assembled product, the scanner can do other things. When I slice the processor off that assembled product, well, the processor can do other things. No, I think, but in fairness, what the defendants are arguing is that even if you have the entire assembled product, at the end of the day, you could print off something else. You could print off something other than that manifest. You could print off, you know, as I said, billing invoices or employee hours, anything else. Just like this court held in I-4-I, when there is a specific piece of the software that can be used only to infringe, so if there's a specific piece of the dispatch software that can only be used to generate a loading manifest, it doesn't matter that you might be able to use another piece of that software, just like in RICO, another piece of that software to create a billing statement because there is a significant piece of the software that can only be used to create a loading manifest. And when attached to a scanner and attached to a processor, you have, voila, the 078 patent. And the allegations in our complaint were that when you attach all these things with that specific function of creating a loading manifest, there is no substantial, non-infringing use for anything else. And what the defendants have said, and they really haven't challenged that particular point, what they've instead said was, well, but if I slice my bill and use it to fax the pictures of my grandkids to my sister, that is irrelevant in this court's analysis under HADOCHE. And when you assemble it together, the fact that it could be used for a billing receipt to going back to billing is irrelevant in this court's analysis under RICO. Once that dispatch software is stuck on the end of the process as combined by the defendants, there is no substantial, non-infringing use at the pleading stage at the very least. I have my job to convince the court in summary judgment and to convince a jury if I get past summary judgment that I'm right on that point. But at the pleading stage, I shouldn't have to convince anybody that I'm right on that particular point because I get all reasonable inferences at the pleading stage. Do you have a question? She asked it. Any more questions? No, but I would like to comment that we have Cleveland-based law firms on both sides of the V here, which makes me feel very close to home. Thank you for that, Your Honor. Thank you. Okay. Thank you, Mr. White and Mr. Crankin. The case is taken under submission.